UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| AUBREY EUGENE WILEY, ET AL. | § | |
| | § | |
| v. | § | CIVIL NO. 4:20-CV-345-SDJ |
| | § | |
| WABTEC MANUFACTURING | § | |
| SOLUTIONS, LLC | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Wabtec Manufacturing Solutions, LLC's Rule 12(b)(6) Motion to Dismiss Plaintiffs' Second Amended Complaint, (Dkt. #27). The Court, having considered the motion and the applicable legal authorities, concludes that the motion should be **DENIED**.

### I. BACKGROUND

Plaintiffs Aubrey Eugene Wiley, Bettye Wiley Neely, and Laura Annette Lowry, individually and as trustee of the testamentary trust created under the will of Donald Bennett Wiley (collectively, "the Wileys"), are the owners in fee simple of real estate located in Denton County, Texas, totaling 155.175 acres ("the Property"). (Dkt. #18 ¶ 9). Defendant Wabtec Manufacturing Solutions, LLC, is the beneficiary of and successor-in-interest to an easement comprising a one-hundred-foot-wide strip of land on the Property, originally granted to a remote predecessor in interest of Wabtec via an 1886 condemnation proceeding ("1886 Easement"). The 1886 Easement bisects the Property, dividing it into two separate tracts—a larger tract to the west and a smaller, 27.30-acre tract to the east.

1

In 1994, County Court at Law No. 3 in Denton County granted to Atchison, Topeka, and Santa Fe Railway Company ("Atchison")—a Wabtec predecessor in interest and the then-dominant estate with respect to the 1886 Easement—an easement "for the construction, location, reconstruction, operation, and maintenance of [its] main rail line north and west of the City's Alliance Airport upon a 12.852 acre portion of the Property," on the western tract ("the 1994 Easement"). (Dkt. #18 ¶ 13) (quotation omitted). Subsequently, Atchison relocated its main rail line from the 1886 Easement to the 1994 Easement due to the expansion of the City's Alliance Airport. (Dkt. #18 ¶ 12). Atchison then conveyed[1] to GE Manufacturing Solutions ("GE")—Wabtec's immediate predecessor in interest—the 1886 Easement.

On or about March 15, 2016, GE contracted American Track Generator ("ATG") to construct a road and test track on the east 27.30-acre tract. This contract between GE and ATG (the "ATG Contract") contained a promised completion date of August 19, 2016. (Dkt. #18 ¶ 16); (Dkt. #27-1 at 1–2). GE subsequently merged with Wabtec.

In late 2019, the Wileys contracted a surveyor to survey the Property. The results of that survey, according to the Wileys, revealed that Wabtec had exceeded the scope of the 1886 Easement and were trespassing on the Property.

On April 15, 2020, the Wileys sued Wabtec in Texas state court. (Dkt. #3). And shortly thereafter, Wabtec removed the case to this Court.[2] In their complaint, the

---

[1] It is not clear from the record whether Atchison directly conveyed the 1886 Easement to GE or whether other predecessors in interest came between Atchison and GE. But for purposes of the Court's present analysis, the question is immaterial because it is undisputed that GE—and, consequently, Wabtec—received whatever rights or lack thereof to the 1886 Easement that Atchison once possessed.

Wileys claim that Wabtec trespassed on the Property by constructing and continuing to use the road and test track. Specifically, the Wileys allege that Wabtec physically, intentionally, and voluntarily entered the Wileys' property without license or other permission. The Wileys also assert that this allegedly unlawful entry was inherently undiscoverable and that Wabtec fraudulently concealed its wrongful activities.

Based on these allegations, the Wileys assert five causes of action: (1) "Trespass"; (2) "Trespass: Abuse of Easement"; (3) "Trespass: Overuse of Easement"; (4) "Abandonment"; and (5) "Unjust Enrichment." (Dkt. # 18 at 5–8). The Wileys also seek permanent injunctive relief and a declaration that Wabtec both constructed the road and test track without a valid easement and has continued to use the Property without legal authorization.

Wabtec now moves to dismiss the Wileys' complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). For the reasons explained below, the motion is denied.

## II. LEGAL STANDARD

Rule 12(b)(6) authorizes dismissal of a complaint when the plaintiff has failed to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). Under

---

[2] The Court has subject-matter jurisdiction over this case under 28 U.S.C. § 1332. Plaintiff Aubrey Eugene Wiley is a citizen of Texas, Plaintiff Neely is a citizen of Colorado, and Plaintiff Lowry is a citizen of Texas. (Dkt. #62). Defendant Wabtec Manufacturing Solutions, LLC is "a Delaware limited liability company with a sole member, Wabtec US Rail, Inc.," which is a Delaware corporation with its principal place of business in Pennsylvania. (Dkt. #1 at 3). Thus, complete diversity of citizenship exists. Additionally, the Wileys seek monetary relief over $1,000,000, (Dkt. #18 ¶ 2), and it is apparent from the face of the pleadings that the amount in controversy exceeds $75,000, exclusive of interest and costs. Thus, the requirements for diversity jurisdiction under 28 U.S.C. § 1332 are satisfied.

Rule 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a probability that the defendant is liable is not required, the plausibility standard demands "more than a sheer possibility. . . ." *Id.*

In assessing a motion to dismiss under Rule 12(b)(6), the "court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quotation omitted). Legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. To determine whether the plaintiff has pleaded enough to "nudge[] [its] claims . . . across the line from conceivable to plausible," a court draws on its own common sense and judicial experience. *Id.* at 679–80 (quoting *Twombly*, 550 U.S. at 570). The court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are referred to in the complaint and are central to the claim.[3] *Lone Star Fund V (U.S.), L.P. v.*

---

[3] Here, the Wileys refer to the ATG Contract in their Second Amended Complaint. (Dkt. #18 ¶ 16). The ATG contract also is central to the Wileys' claims that Wabtec, acting under the ATG contract, committed trespass, exceeded the scope of its easement, and unjustly enriched itself when it constructed and used the road and test track. The Court will

*Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

## III. DISCUSSION

### A. The Wileys' Res Judicata Argument is Meritless.

As a threshold matter, the Wileys argue that the doctrine of res judicata bars Wabtec from arguing for dismissal of their claims under Rule 12(b)(6). That's because, the Wileys say, the Court denied as moot Wabtec's motion to dismiss the Wileys' First Amended Complaint in light of the filing of their Second Amended Complaint. *See* (Dkt. #25 at 3). The Wileys are mistaken.

"The doctrine of res judicata, read in the broad sense of the term, embraces two distinct preclusion concepts: claim preclusion (often termed 'res judicata') and issue preclusion (often referred to as 'collateral estoppel')." *United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994) (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984)). The terminology used in this area often breeds confusion, which is unfortunate because the "differences between claim preclusion and issue preclusion are significant." *Id.* at 311.

Claim preclusion (sometimes referred to as "pure" res judicata) "bars the litigation of claims that either have been litigated or should have been raised in an earlier suit." *Test Masters Educ. Svcs., Inc. v. Singh*, 428 F.3d 559, 571 (5th Cir. 2005).

---

therefore consider the ATG Contract in determining whether to grant Wabtec's Rule 12(b)(6) motion. *See In Re Katrina Canal Breaches*, 495 F.3d at 205 ("[B]ecause the defendants attached the contracts to their motions to dismiss, the contracts were referred to in the complaints, and the contracts are central to the plaintiffs' claims, we may consider the terms of the contracts in assessing the motions to dismiss.").

The test for claim preclusion has four elements: "(1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded by a final judgment on the merits; and (4) the same claim or cause of action was involved in both actions." *Id.* By precluding claims or defenses that could have been asserted in a prior action, claim preclusion "insures the finality of judgments" and "protects litigants from multiple lawsuits." *Shanbaum*, 10 F.3d at 310.

Issue preclusion (otherwise known as collateral estoppel), on the other hand, "promotes the interests of judicial economy by treating specific issues of fact or law that are validly and necessarily determined between two parties as final and conclusive." *Id.* at 311. The test for issue preclusion also has four elements: (1) "the issue under consideration in a subsequent action must be identical to the issue litigated in a prior action"; (2) "the issue must have been fully and vigorously litigated in the prior action"; (3) "the issue must have been necessary to support the judgment in the prior case"; and (4) "there must be no special circumstance that would render preclusion inappropriate or unfair." *Id.* "If these conditions are satisfied, issue preclusion prohibits a party from seeking another determination of the litigated issue in the subsequent action." *Id.*

Although the Wileys fail to specify whether they are attempting to invoke claim preclusion or issue preclusion, it's clear that neither doctrine applies here. Claim preclusion is inapplicable because the Court's order denying as moot Wabtec's prior Rule 12(b)(6) motion was an interlocutory order, not a final decision on the merits.

6

*See Singh*, 428 F.3d at 571. Issue preclusion is likewise inapplicable because the Court did not address—let alone necessarily decide—any of the issues raised in the instant motion when it denied Wabtec's prior Rule 12(b)(6) motion as moot. *See Shanbaum*, 10 F.3d at 311. Thus, neither claim preclusion nor issue preclusion prohibits Wabtec from arguing that the Court should dismiss the Wileys' complaint.

## B. Wabtec Has Not Met Its Burden of Showing that the Wileys' Claims are Time-Barred.

The thrust of Wabtec's Rule 12(b)(6) motion is that the Wileys' claims are time-barred. "Rule 12(b)(6) dismissal under a statute of limitation is proper only when the complaint makes plain that the claim is time-barred and raises no basis for tolling." *Petrobras Am., Inc. v. Samsung Heavy Indus. Co., Ltd.*, 9 F.4th 247, 253 (5th Cir. 2021) (per curiam). Wabtec must make that showing here for the Court to dismiss the Wileys' lawsuit because a "statute of limitations is an affirmative defense for which the defendant has the burden of proof." *Id.* at 254 (quotation and brackets omitted).

Before turning to the merits of Wabtec's limitations argument, one point deserves clarification: the Wileys' claims for "abuse of easement," "overuse of easement," and "abandonment" are not independent of their cause of action for trespass. Under Texas law, which undisputedly governs here, a plaintiff who brings an action for trespass to real property must establish that the defendant's entry onto the property was unauthorized—that is, without the plaintiff's consent. *See Env't Processing Sys., L.C. v. FPL Farming Ltd.*, 457 S.W.3d 414, 425 (Tex. 2015). Relevant here, one form of legal consent to enter property is an express easement. *See Marcus Cable Assocs. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002).

If the beneficiary of an easement enters or uses land in a way that exceeds the rights expressly conveyed in the easement, a trespass has occurred. *Id.* The beneficiary of an easement likewise commits a trespass if it enters or uses land after it has abandoned the easement. *See Cook v. AT&T Corp.*, No. 4:16-CV-542, 2017 WL 6883692, at *1 (S.D. Tex. Mar. 28, 2017) (characterizing abandonment claim as a theory of trespass). That is because, once the beneficiary of the easement abandons it, "the easement disappears, and the landowner resumes his full and unencumbered interest in the land." *Marvin M. Brandt Revocable Tr. v. United States*, 572 U.S. 93, 105, 134 S.Ct. 1257, 188 L.Ed.2d 272 (2014); *see also Dallas Cty. v. Miller*, 166 S.W.2d 922, 924 (Tex. 1942) (recognizing easements may be unilaterally terminated by abandonment).

As the Wileys' complaint and their response to Wabtec's Rule 12(b)(6) motion suggest, their claims for "abuse of easement" and "overuse of easement" are alternative (and largely overlapping) theories of trespass. *See CenterPoint Energy Houston Elec. LLC v. Bluebonnet Drive, Ltd.*, 264 S.W.3d 381, 387 (Tex. App.—Houston 2008, pet. denied) ("An easement holder who exceeds the rights granted by the owner of the servient estate . . . commits a trespass."). The same is true for the Wileys' abandonment claim. In addition to allegations that Wabtec exceeded the scope of the 1886 Easement, the Wileys alternatively allege that Wabtec lacked authorization to construct and use the test track because its predecessor in interest

abandoned the easement. *See* (Dkt. #18 ¶¶ 32–33). The Wileys' abandonment claim—like its abuse of easement and overuse of easement claims—sounds in trespass.[4]

Under Texas law, suits for trespass must be filed "not later than two years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.003(a); *see also Auerbach v. Dallas Area Rapid Transit*, No. 05-94-01207-CV, 1995 WL 447530, at *1 (Tex. App.—Dallas July 26, 1995, pet. denied) (concluding that "claims for abuse of easement were barred by the two-year statute of limitations"). A claim for unjust enrichment also is "governed by the two-year statute of limitations in section 16.003 of the Civil Practice and Remedies Code." *Elledge v. Friberg-Cooper Water Supply Corp.*, 240 S.W.3d 869, 871 (Tex. 2007). And when a trespass claim is time-barred, so is an unjust-enrichment claim based on the alleged trespass. *See RayMax Mgmt., L.P. v. Am. Tower Corp.*, No. 02-15-00298-CV, 2016 WL 4248041, at *7 (Tex. App.—Fort Worth Aug. 11, 2016, pet. denied). Thus, as Wabtec argues and the Wileys do not dispute, Section 16.003's two-year limitations period governs each of the claims at issue here.

Under Section 16.003(a), the two-year limitations period begins to run "after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE § 16.003(a). The

---

[4] To be clear, not all abandonment claims are litigated through the lens of trespass. A party may, for example, seek a judicial declaration of abandonment and an order quieting title to the abandoned right of way. *See, e.g.*, *Placke v. Lee-Fayette Ctys. W.C.I.D. No. 1*, No. 03-04-00096-CV, 2005 WL 1034075, at *7 (Tex. App.—Austin May 5, 2005, pet. denied) (acknowledging that abandonment "is ordinarily an affirmative defense" but reversing summary judgment because the defendant failed to address a claim for a declaration that it had abandoned an easement). Although the Wileys seek a general declaration that Wabtec's construction and use of the road and test track was unauthorized, they have not asked for a declaration that Wabtec's predecessor in interest abandoned the 1886 Easement. Instead, as noted above, the Wileys plead abandonment as a theory of trespass.

date on which accrual occurs depends on whether the injury to land is characterized as "permanent" or "temporary." *Gilbert Wheeler, Inc. v. Enbridge Pipelines (E. Texas), L.P.*, 449 S.W.3d 474, 478 (Tex. 2014). An injury to land "is considered permanent if (a) it cannot be repaired, fixed, or restored, *or* (b) even though the injury can be repaired, fixed, or restored, it is substantially certain that the injury will repeatedly, continually, and regularly recur, such that future injury can be reasonably evaluated." *Id.* at 480. Conversely, an injury to land "is considered temporary if (a) it can be repaired, fixed, or restored, *and* (b) any anticipated recurrence would be only occasional, irregular, intermittent, and not reasonably predictable, such that future injury could not be estimated with reasonable certainty." *Id.*

Again, the Wileys do not contest Wabtec's characterization of the road and test track as a permanent injury to the Property. Nor do the Wileys challenge Wabtec's assertion that their claims accrued upon completion of the test track. *See, e.g.*, *Scott v. Babb*, 419 S.W.3d 531, 534 (Tex. App.—San Antonio 2013) ("Based on the fence's characterization as a permanent injury to the land, the completion date of the fence's construction is dispositive for purposes of limitations."); *Auerbach*, 1995 WL 447530, at *3 ("Where a building or permanent structure is placed on a private easement, the limitations period on an action to abate the obstruction begins to run with the completion of the obstruction."). What is disputed is the date on which the test track was completed. In short, if construction of the test track was completed before April 15, 2018, the Wileys' claims are barred by the applicable statute of limitations.

Relying solely on the ATG Contract, Wabtec argues that construction of the test track was completed in or about August 2016, roughly three and a half years before the Wileys filed suit in state court. But the ATG Contract only shows that ATG "promised" to complete construction of the test track by August 19, 2016, based on a "preliminary schedule." (Dkt. #27-1 at 3, 13). Nowhere does the ATG Contract, which was executed in March 2016, indicate that the test track was, in fact, completed by August of that year. *See* (Dkt. #27-1). The ATG Contract, therefore, only establishes the test track's *planned* completion date—not the *actual* date of its completion.

Wabtec does not point to, and the Court has not found, any other allegation supporting a conclusion that the test track was completed before April 15, 2018. To the contrary, other allegations in the pleadings suggest that the test track might have been completed at a much later date. The Wileys allege, for example, that they did not discover Wabtec's alleged trespass based on the construction and use of the test track until November 2019. Accepting the complaint's allegations as true and viewing them in the light most favorable to the Wileys, Wabtec's arguments at best raise a fact question not suitable for disposition under Rule 12(b)(6). *Cf. Abdul-Alim Amin v. Universal Life Ins. Co. of Memphis*, 706 F.2d 638, 640 (5th Cir. 1983) ("While a statute-of-limitations defense may be raised in a motion to dismiss under Fed. R. Civ. P. 12(b)(6), such a motion should not be granted unless 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" (quoting *Mann v. Adams Realty Co.*, 556 F.2d 288, 293 (5th Cir. 1977))).

11

At bottom, Wabtec has not conclusively established at the 12(b)(6) stage that the Wileys' claims accrued before April 15, 2018. Dismissal of the Wileys' claims at the pleading stage based on the statute of limitations is therefore inappropriate. Because the pleadings fail to establish as a matter of law that the Wileys' claims are barred by the applicable statute of limitations, the Court need not address the parties' arguments as to tolling and the Texas discovery rule.

## C. The Wileys' Claims Are Not Stale Under the Doctrine of Laches.

Wabtec also argues that the Wileys' claims are barred by laches. "To invoke the equitable doctrine of laches, the moving party ordinarily must show an unreasonable delay by the opposing party in asserting [its] rights, and also the moving party's good faith and detrimental change in position because of the delay." *In re Laibe Corp.*, 307 S.W.3d 314, 318 (Tex. 2010). "Generally in the absence of some element of estoppel or such extraordinary circumstances as would render inequitable the enforcement of petitioners' right after a delay, laches will not bar a suit short of the period set forth in the limitation statute." *Barfield v. Howard M. Smith Co.*, 426 S.W.2d 834, 840 (Tex. 1968)). "Laches should not bar an action on which limitations has not run unless allowing the action 'would work a grave injustice.'" *Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998) (quoting *Culver v. Pickens*, 176 S.W.2d 167, 170 (Tex. 1943)).

As *Barfield* illustrates, the standard for laches is not easy to meet. *See* 426 S.W.2d at 840. In *Barfield*, a landlord delayed nearly four years in suing for unpaid rent on a lease after a tenant had vacated the property. *Id.* The tenant argued that

he would either have tried to set aside the lease or use the premises had he known of the landlord's claim earlier. *Id.* Meanwhile, the landlord offered no explanation for the delay. *Id.* Yet the Texas Supreme Court refused to hold that laches barred the landlord's suit when the statute of limitations did not. *Id.*

Here, the Court has already concluded that Wabtec has not established as a matter of law that the Wileys sued outside the limitations period. Nor has Wabtec shown that the Wileys claims are barred by estoppel or by extraordinary circumstances. Wabtec attempts to head off this conclusion by focusing its laches argument exclusively on the Wileys' abandonment theory, arguing that the Wileys' have known since 1994 that the 1886 Easement was abandoned. Even if that's true, it does not make the Wileys' delay in bringing this action unreasonable.

As the Court explained above, the Wileys' abandonment claim sounds in trespass, and the Wileys allege that they did not discover Wabtec's alleged trespass until November 2019. Indeed, based on the ATG Contract, construction of the test track did not even begin until March 2016. Under these circumstances, allowing the Wileys to pursue this action would not "work a grave injustice." *Caldwell*, 975 S.W.2d at 538 (quoting *Culver*, 176 S.W.2d at 170). The Court thus concludes that the Wileys' claims, brought within the statutory limitations period, are not barred by laches.

## D. Wabtec's Remaining Arguments for Dismissal are Unpersuasive.

Wabtec makes several additional arguments for dismissal, including that the Wileys have not stated a plausible claim for abandonment, unjust enrichment, or a declaratory judgment. The Court addresses each in turn.

### 1.  The Wileys have adequately pleaded abandonment.

First, Wabtec argues that the Wileys have failed to state a plausible claim for abandonment. In doing so, Wabtec does not challenge the sufficiency of the Wileys' abandonment allegations. Rather, Wabtec contends that the abandonment claim fails as a matter of law based on the complaint's allegations that Wabtec has continued to use the Property. Specifically, Wabtec argues that "an easement is not abandoned if there is any continued use" and that a "concurrent claim that the dominant estate . . . has exceeded the scope of an easement negates any claim of abandonment." (Dkt. #27 at 20) (citing *Samaratunga Family Tr. v. Am. Tower, Inc.*, No. A-17-CV-097 LY, 2017 WL 2274491, at *6 (W.D. Tex. May 24, 2017)).

Wabtec misconstrues—at least in part—the Wileys' abandonment theory. The Wileys have not asserted that *Wabtec* abandoned the 1886 Easement. Their claim, instead, is that *Atchison*, Wabtec's predecessor in interest, abandoned the 1886 Easement by relocating its main rail line from the 1886 Easement to the 1994 Easement. The Wileys allege that Atchison's relocation of its main rail line eliminated the purpose and need for the 1886 Easement, thereby extinguishing the easement and Atchison's rights to use the Property. *See* (Dkt. #18 at 6); (Dkt. #27 at 20–21). Thus, according to the Wileys, when Atchison purported to convey the 1886 Easement to GE—Wabtec's predecessor in interest—the easement no longer existed and, consequently, no rights to the Property were conveyed.

Accepting these allegations as true, the Wileys' abandonment theory—whether meritorious or not—is not mutually exclusive with their other theories of trespass.

14

And while nonuse alone is insufficient to show abandonment, the above alleged acts, taken together, may constitute a plausible claim for abandonment. *See Miller*, 166 S.W.2d at 924 (holding that a claim of abandonment requires a "definite act showing an intention to abandon and terminate the right possessed by the easement owner").

### 2.  The Wileys have stated a plausible claim for unjust enrichment.

Wabtec next contends that the Wileys fail to allege facts sufficient to support a claim for unjust enrichment. "Unjust enrichment is an equitable principle holding that one who receives benefits unjustly should make restitution for those benefits." *Villarreal v. Grant Geophysical, Inc.*, 136 S.W.3d 265, 270 (Tex. App.—San Antonio 2004, pet. denied). A party is unjustly enriched when it obtains a "benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

When a plaintiff's unjust-enrichment claim is based on allegations of trespass, a finding that no trespass occurred necessarily dooms the unjust-enrichment claim. *See Villarreal*, 136 S.W.3d at 270. In *Villarreal*, the plaintiffs alleged that the defendants took undue advantage of them by intentionally acquiring seismic data of their mineral estate and utilizing that data to obtain profit at their expense. *Id.* Because the defendants did not physically invade the surface estate above the mineral estate, the state court concluded that there was no geophysical trespass. *Id.* The court then rejected the plaintiffs' unjust-enrichment claim, holding that "since a trespass did not occur under current Texas law, [the defendants] did not wrongfully secure a benefit." *Id.* Conversely, allegations that a defendant benefitted from a

15

trespass at the expense of the landowner *can* constitute an undue advantage supporting an unjust-enrichment claim. *See id.*

The Wileys allege that "Wabtec is unjustly receiving, using, and enjoying benefits and/or enrichments (i.e. payments, profits, and use of the land in question) for which they are doing so to the detriment of the Wiley Family, and without their consent." (Dkt. #18 ¶ 39). To be sure, this conclusory statement standing alone would be insufficient to state a plausible claim to relief. But in alleging unjust enrichment, the Wileys also incorporate by reference all the prior factual allegations in the Second Amended Complaint. (Dkt. #18 ¶ 38). These allegations include, among other things, that Wabtec physically and intentionally entered the Property without authorization, constructed the test track, and has continued to unlawfully use the Property to test railcars for sale in the private market. This is sufficient factual matter, accepted as true, that allows the Court to draw the reasonable inference that Wabtec is liable for unjust enrichment.

### 3. Wabtec's derivative argument for dismissal of the Wileys' declaratory judgment claim also fails.

Finally, Wabtec urges the Court to dismiss the Wileys' declaratory judgment claim because, in its view, "there is no actual, substantial case or controversy between the parties that would support any declaratory resolution." (Dkt. #27 at 24) (quotation omitted). This argument rests on a faulty premise because, as the Court explained above, the Wileys have stated a claim on which relief can be granted. Wabtec offers no other reason why the Wileys' request for declaratory relief is improper. *See* 28 U.S.C. § 2201(a) ("[A]ny court of the United States . . . may declare the rights and

16

other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."). Accordingly, dismissal of the Wileys' claim for a declaratory judgment is inappropriate.

## IV. CONCLUSION

For all the reasons the Court has given, Defendant Wabtec Manufacturing Solutions, LLC's Rule 12(b)(6) Motion to Dismiss Plaintiffs' Second Amended Complaint, (Dkt. #27), is **DENIED**.

**So ORDERED and SIGNED this 27th day of September, 2021.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE